## EDISON et al. v. KLABER.

*Circuit Court, S. D. New York. April 5, 1889.)*

PATENTS—INFRINGEMENT.

Claim 2 of letters patent No. 180,857, August 8, 1876, to Thomas A. Edison, describing a method of printing in permanent semi-fluid ink, by puncturing a sheet of paper or similar material with numerous small holes, filling them with a semi-liquid ink, and pressing the same on the surface to be printed, the puncturing needle being reciprocated by a shaft revolved by electro-magnetic motors, is not infringed by letters of November 28, 1882, and December 22, 1885, to David Gestetner, describing a process in which bamboo fiber paper, prepared with a layer of wax or paraffine, is laid on a zinc plate, and on it autographic writing is produced by a little instrument like a pen-holder, to the end of which is attached a diminutive wheel, provided with microscopic corrugations which cut slits in the paper as it rolls, forced along by the hand of the writer, since the Edison patent is not restricted to autographic writing, and also must be restricted to the use of a stencil made by an electric pen, both from the terms of the specification and from the fact that the process was not otherwise new.

In Equity.

Action by Thomas A. Edison, Robert Gilliland, and A. B. Dick Company against Augustus D. Klaber, trading under the name of the Cyclostyle Company, for infringement of patent.

*John C. Tomlinson* and *Richard N. Dyer*, for complainants.

*Price & Stewart*, for defendant

COXE, J. This is an action of infringement, founded upon letters patent No. 180,857, dated August 8, 1876, granted to Thomas A. Edison, for an improvement in autographic printing. The inventor states:

"My improvement relates—*First*, to the instrument employed for puncturing the paper, whereby such instrument can be used by hand in the same manner as a drawing or writing pen; *second*, to the method of printing by direct transfer in permanent semi-liquid ink from the perforated sheet; and, *third*, to the press for holding such transfer sheet, and the paper to be impressed. * * * The pen which I make use of consists of a tube, tapering to a small point, and a needle within that tube, which nee le s reciprocated with great rapidity; and when the needle point is projected iu is sufficiently long to reach through the paper upon which the tube of the pen rests, and when retracted the needle is drawn within the tube, so that the small end thereof is free to be moved from place to place. The great rapidity in the movement of the needle point produces the punctures in the paper sufficiently close together to form lines when the pen is manipulated in writing or drawing; and, as nothing is removed from the paper, its strength is not materially injured by the punctures or perforations; and it will be apparent that any suitable device may be employed for reciprocating the perforating needle. * * * The mode of printing from the perforated sheet is to fill the holes with ink by means of a roller applied to the right side of the perforated sheet; and then, when said ink is well worked into the holes, to place beneath such perforated sheet the paper upon which the impression is to be made, and then pass over the perforated sheet a roller that presses the ink through the perforations to the surface of the sheet below. * * * Various forms of electro-magnetic motors may be employed to revolve the shaft that reciprocates the puncturing

needle, and the movement of a vibrating armature might be transferred directly to the needle if desired."

The second claim only is involved. It is for "the method herein described of printing in permanent semi-fluid ink, by puncturing a sheet of paper or similar material with numerous small holes, filling such holes with a semi-liquid ink, and pressing the same upon the surface to be printed, substantially as set forth." The defenses are lack of novelty and invention, and non-infringement. The prior art shows many structures and methods closely approximating those of the patentee. An Italian, named Zuccato, discovered in 1874 a method by which an autographic stencil is produced by writing with an ordinary pen and caustic ink upon a varnished paper. The printing is done with a permanent semi-liquid ink by means of pressure. In 1873 a patent was granted to Charles Bordas for a method of transferring embroidery patterns from a perforated original stencil to sheets of paper by forcing powder or a liquid through the holes. Letters and figures were printed by this method. In 1869, George V. Metzel substituted for the brush previously used, a roller covered with plush, velvet, or carpeting, which was impregnated with ink, and pressed over the stencil-plate. Henry W. Rudolf, in 1870, received a patent which shows a method of printing by means of a paper stencil and an inked roller similar to the ordinary type-roller. In the same year a patent was granted to Robert Boyd for an improvement in machinery for tracing embroidery patterns. It describes a pen containing a reciprocating perforating needle or stabber. So far as the pen proper and the work done by it are concerned, it is almost the exact counterpart of the Edison device. The motor is more cumbersome, the machine is not so readily manipulated, but it would be difficult to distinguish a stencil made by it from one made by the electric pen. A machine similarly constructed was in operation in the establishment of Mrs. McDonald, in New York city, prior to the spring of 1873; and specimens of the work done thereon have been introduced in evidence. Patterns, monograms, figures, and autographic writing can be, and have been, made by it. Printing from these stencils was done with powder or with ink. In 1866, Samuel Huffman obtained a patent for a new puncturing machine for making patterns, which is the exact counterpart of the Edison pen, except that it is lighter and less awkward in handling, and the reciprocating needle is operated by clock-work, instead of an electro-magnet. Other references show stencils made by hand-guided implements in which a small toothed wheel punctures the paper. In others still, stencils are made by writing with a pointed stylus on a hard corrugated surface, like a file or rasp. Mr. Edison himself recognized the superior advantages in simplicity and cheapness of the latter method, and in 1880 procured a patent in which the stencil is formed by writing with a blunt stylus upon a slab containing numerous fine perforating points. The electric pen has been superseded by the "Mimeograph." It will be seen, therefore, that in August, 1876, the field was extensively occupied. A pioneer patent was out of the question in this art. There could be no broad claim for printing with a paper stencil, semi-liquid

ink, and a roller. Neither could there be a broad claim for a puncturing device. Both were old. There was room for the invention of a practical instrument which could be used to adapt known methods to the reproduction of autographic writing, but the discovery of this instrument does not enable the inventor to levy tribute upon the entire art. Mr. Edison invented the electric pen. For this, though it is too expensive and complicated to be of great practical utility, he is entitled to credit. The invention was not, however, of such a character as to block all further progress. Other inventors could improve on him, as he had improved on Huffman and Zuccato. The described method was not practiced, because no convenient practical means of making a stencil was at hand. It was not because the world was ignorant of the fact that ink would go through holes in paper when rolled with a printer's type-roller. The patentee made a new stencil, and printed from it by the old method. He now seeks to prevent others who also invent new stencils from using the same old method. The prior art, and the express language of the specification, combine to restrict the claim to the use of a stencil made by the electric pen. Unless so restricted the claim is invalid; if so restricted, the defendant does not infringe. Eliminate the electric pen, and very little is left. There was nothing new in the method of printing, considered apart from the ingeniously formed stencil. Edison could not have had a patent in 1876 for a new method of printing if the stencil used had been made by a Boyd or Huffman pen, or a common metallic pin. The words and sentences stabbed out by the McDonald machine might be duplicated by passing an inked roller—Metzel's, for instance—over the paper, without infringing the patent. It would have required no exercise of the inventive faculties to do this in 1876. The old method would have been slightly changed to meet the new conditions, but this is all. The process of printing is the same, whether the type used is Old English, German Text, brevier, or long primer. If a stencil is used, the process is the same whether the ink goes through holes which represent written letters or holes which represent Roman letters, or embroidery patterns. The method is the same, no matter what is copied.

But it is said that if the patent is first expanded so as to include any instrument capable of making a stencil, and then narrowed so as to exclude all but autographic stencils, the defendant may be held as an infringer. The claim does not use the word "autographic," and it would seem that the inventor did not intend so to restrict his invention. The construction contended for by the complainants would enable a person to escape infringement by printing Roman characters upon his stencil, instead of writing thereon in his own proper handwriting. Indeed, it would make the apparatus, when used without license, an infringing or non-infringing one, according to the use to which it is put. A person who copied a letter on it would infringe the claim; but if he copied a design he would not infringe. The name of defendant's machine could lawfully be copied in this form, *Cyclostyle:* but not in this, *Cyclostyle.*

The words, "the method herein described," and "substantially as set forth," should not be ignored. The only method described by which the sheet of paper is punctured with numerous small holes is by the use of the electric pen. To permit any puncturing method to be substituted in place of the electric pen would be to give the claim a construction which invalidates it, and which is not warranted by the proof. The claim, when properly construed, is not infringed by the defendant. His method is as follows: Bamboo-fiber paper, prepared with a layer of wax or paraffine, is laid upon a zinc plate. On this paper, so placed, autographic writing or any design may be produced,—not by an electric pen, for the hard bed would destroy the reciprocating needle, but by a little instrument like a pen-holder, to the end of which is attached a diminutive wheel, provided with microscopic corrugations which cut little slits in the paper as it rolls, being forced along by the hand of the writer.

For this instrument, and for the transfer paper, patents were granted to David Gestetner, dated, respectively, November 28, 1882, and December 22, 1885. The printing from the stencil thus formed is done in the well-known manner. The "Cyclostyle" of the defendant shows another step in the art. It is simple, and comparatively inexpensive. It is as much an improvement on Edison's method as that was an improvement on what preceded it. The bill is dismissed.